

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DEL/ALK                                     *271 Cadman Plaza East*
F. #2020R00491                              *Brooklyn, New York 11201*

July 6, 2022

<u>By ECF and Email</u>

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Tal Ohana
             <u>Criminal Docket No. 21-369 (MKB)</u>

Dear Chief Judge Brodie:

        The government respectfully submits this letter in advance of the defendant Tal Ohana's sentencing, which is scheduled for July 14, 2022. On August 13, 2021, Ohana pleaded guilty to an Information charging her with one count of conspiring to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the U.S. Department of Transportation (the "USDOT") and the Federal Motor Carrier Safety Administration (the "FMCSA"), in violation of 18 U.S.C. § 371. For the reasons set forth below, the government does not seek a term of incarceration, but submits that a term of probation, or probation and community service, is warranted here.

I.     <u>Background</u>

        Ohana's conviction arose from her employment at several affiliated moving companies. By way of background, the FMCSA is an agency of the USDOT, which enforces regulations governing motor carriers, including moving companies. Among other requirements, motor carriers are required to register with the FMCSA and obtain a USDOT number. A USDOT number is a unique identifier that aids the FMCSA in collecting and monitoring a motor carrier's safety record and other information, including but not limited to audits, compliance reviews, crash investigations and inspections. Depending on the nature of the business of the motor carrier, many motor carriers operating in interstate commerce, including those engaged in the shipment of household goods, are also required to obtain interstate operating authority from the USDOT.

To obtain a USDOT number and operating authority, motor carriers are required to complete and submit to the FMCSA, under penalty of perjury, a Form MCSA 1. Form MCSA 1 requires the applicant to provide, among other things, the following information: (i) the motor carrier's business address; (ii) the motor carrier's insurance information; (iii) information regarding the motor carrier's compliance with USDOT safety regulations; and (iv) the motor carrier's relationship and affiliation with any other motor carrier within the preceding three years. In particular, pursuant to Title 49, Code of Federal Regulations, Section 385.1003, a motor carrier is required to identify other motor carriers with common ownership, management, control or familial relationship, which are known as "reincarnated" or "affiliated" motor carriers. Title 49, Code of Federal Regulations, Section 385.1005 prohibits two or more motor carriers from using common ownership, management, control or familial relationship to avoid compliance with legal requirements or otherwise conceal non-compliance or a history of non-compliance.

Ohana worked at several affiliated moving companies owned and operated by an individual named Yakov Moroz from January 2018 through August 2020. Moroz and other employees of those moving companies are currently charged by Superseding Indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and Moroz is separately charged with making false statements, in violation of 18 U.S.C. § 1001(a)(3). See United States v. Moroz, et al., 20 CR 342 (S-1) (MKB). The Superseding Indictment alleges that Moroz and his co-defendants defrauded customers of the moving companies by intentionally misrepresenting the estimated charges for moving services and then forcing the victims to pay additional money by refusing to return, and threatening to sell, their belongings if the additional money was not paid. The Superseding Indictment further alleges that Moroz submitted false forms to the FMCSA in order to hide his association with the moving companies from law enforcement and regulators.

Ohana worked as a clerical assistant to Moroz in a Brooklyn office maintained by Moroz. She managed supplies, payroll, lease/rental agreements, and other tasks in connection with her employment. The government's investigation indicated that Ohana did not have customer-related involvement and did not participate in soliciting or managing customers in connection with the fraudulent scheme. However, during her time working for Moroz, Ohana assisted Moroz in defrauding the USDOT and the FMCSA. Specifically, Ohana completed, under penalty of perjury, forms to the FMCSA which she knew contained false information about the companies' ownership and true location, and failed to disclose the moving companies' affiliations with other moving companies whose operating authority had been revoked or suspended by the FMCSA. Specifically, the defendant misrepresented the moving companies' physical locations to federal regulators and customers by setting up "virtual offices" around the country. These "virtual offices" provided the moving companies with a local address and telephone number, but did not provide physical office space, thereby obscuring their actual operating locations and preventing regulators and customers from locating them.

Ohana also directed others to lie to federal regulators and customers to conceal the moving companies' true locations. For instance, on or about March 1, 2018, Ohana learned

that FMCSA representatives visited what they believed to be a physical address, but was actually only a "virtual office" for one of the moving companies, C and D Moving, Inc., meaning that while it appeared to be a brick-and-mortar address, it functioned as essentially a mailing address.  On learning about the visit, Ohana contacted the employees of the company that provided the "virtual office," and directed its employees to provide regulators with a false address in Brooklyn, New York, for C And D Moving Inc. in order to conceal the moving company's location from regulators.  On or about April 11, 2018, Ohana also directed employees of the same "virtual office" company, which was also provided a "virtual office" for Cross Country Moving and Storage, not to inform a customer that Cross Country Moving and Storage actually operated from a different address.  Finally, on or about May 29, 2018, the Ohana opened another "virtual office" for Cross Country Moving and Storage and told an employee of the "virtual office" company that Cross Country Moving and Storage operated from an address in Brooklyn, New York, that she knew to be false.

II.   Guidelines Calculation

As explained further below, both the PSR and the parties' plea agreement calculate a Guidelines range of 0 to 6 months' imprisonment.  However, the PSR calculates a total adjusted offense level of 8, while the plea agreement calculates a total adjusted offense level of 7.

The PSR calculates a base offense level of 6 under Guidelines §§ 2X1.1(a) and 2B1.1(a)(2), and includes a 6-level increase under Guideline § 2B1.1(b)(10)(a) because Ohana participated in relocating moving companies to evade law enforcement and regulatory officials.  With respect to reductions, the PSR includes a 2-level minor role reduction and a 2-level reduction for acceptance of responsibility.  Accordingly, the PSR calculates a total adjusted offense level of 8.  Based on this total offense level and a criminal history category of I, the PSR calculates the defendant's Guidelines range to be 0 to 6 months' imprisonment.

The plea agreement's Guidelines calculation largely mirrors the PSR's calculation, except the plea agreement includes a 3-level minor role reduction rather than a 2-level minor role reduction.  The government respectfully submits, consistent with the plea agreement, that a 3-level minor role reduction is appropriate in this case.  Specifically, the factors set forth in Guideline § 3B1.2, note 3(C), including the defendant's lack of decision-making authority, the fact that she did not participate in planning or organizing the underlying scheme to defraud moving company customers, and the fact that her only benefit from the criminal activity was a regular paycheck, weigh in favor of a 3-level minor role reduction.  Accordingly, the government respectfully submits that the Court should adopt the plea agreement's 3-level minor role reduction.  With a criminal history category of I and a total adjusted offense level of 7, the applicable Guidelines range would also be 0 to 6 months' imprisonment.

III.   <u>Legal Standard</u>

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV.   <u>The Appropriate Sentence</u>

While the evidence does not indicate that Ohana directly participated in the scheme to defraud the moving companies' customers, her criminal conduct is serious.  For two-and-a-half years, Ohana assisted Moroz in establishing and maintaining moving

4

companies at false addresses in the names of individuals she knew did not operate the companies.  This deception prevented regulators and law enforcement agents from locating the companies or its agents and putting an end to the scheme.  Due in part to Ohana's assistance, the fraud continued unabated for years and harmed hundreds of customers to the tune of millions of dollars in loss.

Ohana, however, stands in a different position than Moroz and the other employees at the moving companies who directly defrauded customers.  The government agrees with the Probation Department that Ohana's role in overall offense was limited.  As the PSR and the defense sentencing submission also make clear, Ohana has no prior criminal history and sought additional hours and compensation from Moroz due to her financial situation.  While Ohana should have notified law enforcement, found a different job, or, at the very least, refused to assist Moroz in concealing the companies from federal regulators, the reason that Ohana agreed to participate in the offense are properly considered by the Court as a mitigating factor.  Ohana will undoubtedly be deterred from committing similar such offenses by the collateral consequences of a federal felony conviction.

V.    Conclusion

For the foregoing reasons, the government does not seek a term of incarceration, but submits that a term of probation, or probation and community service, is warranted here.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    _____/s/_____
Devon Lash
Anna L. Karamigios
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (MKB) (by ECF)
Anthony Ricco, Esq. (by Email and ECF)
U.S. Probation Officer Alyssa Lopez (by Email)